DOMINICK BALSEWICZ, Admr., Appellee, *vs.* THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant.

*Opinion filed April 23, 1909—Rehearing denied June 12, 1909.*

1. APPEALS AND ERRORS—*court does not weigh evidence in passing upon motion for directed verdict.* In passing upon a motion for a directed verdict the court looks only to the evidence supporting the claim of the party against whom the motion is directed,— and that in the light most favorable to him; and contradictory evidence, however strong, cannot be considered. '

2. SAME—*evidence contradictory of plaintiff's does not justify instruction to find for defendant.* If the condition of the evidence at the close of the plaintiff's case does not justify an instruction for a verdict in favor of the defendant, no evidence which the defendant may introduce will justify such instruction except uncontradicted evidence of an affirmative defense; but evidence contradictory of the plaintiff's will not do it.

3. RAILROADS—*when person is not a trespasser on track.* A person walking upon a street, who finds the street blocked by cars at a railroad crossing, is not obliged to wait until· the cars are moved, and if, in passing around them, he steps a few feet out of the street upon the railroad right of way he is not a trespasser, and the company is not relieved of its duty to exercise the same degree of care toward him as though he had stayed in the street.

4. SAME—*failure to comply with speed ordinances may or may not establish wantonness.* Failure of a railroad company to observe the speed ordinances of a city in running its trains may or may not establish willfulness or wantonness, as that question depends upon the rate of speed and the other circumstances.

5. JUDGMENTS AND DECREES—*grant of letters of administration is not open to collateral attack.* An order granting letters of ad-

ministration by a court having general jurisdiction of the subject matter is not open to attack in a collateral proceeding upon the ground that the deceased was not a resident of the county where the letters were granted, and that the person appointed as administrator was a stranger, having no right to administer the estate.

6. RELEASE—*release of damages by one administrator bars suit by another.* A release of damages executed by an administrator appointed in a certain county is admissible under plea of the general issue in an action by an administrator, appointed in another county, to recover damages for the death of the same decedent; and it is error for the court to admit evidence to impeach the order granting administration in the former county and to refuse to instruct the jury that the release is a bar to the action.

FARMER and VICKERS, JJ., dissenting; SCOTT and HAND, JJ., specially concurring.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Bureau county; the Hon. S. C. STOUGH, Judge, presiding.

CAIRO A. TRIMBLE, (CHESTER M. DAWES, and J. A. CONNELL, of counsel,) for appellant:

The deceased was a trespasser on appellant's right of way, and cannot recover for an injury suffered there unless the same was willfully and wantonly inflicted. *Railroad Co.* v. *Godfrey,* 71 Ill. 500; *Railroad Co.* v. *Hetherington,* 83 id. 510; *Blanchard* v. *Railroad Co.* 126 id. 417.

A trespasser is charged with a higher degree of care than one in the exercise of a legal right. *Railroad Co.* v. *Blanchard,* 15 Ill. App. 582.

Willfulness or wantonness is not chargeable against a railroad company merely by reason of its violation of a speed ordinance. *Blanchard* v. *Railroad Co.* 126 Ill. 417; *Brown* v. *Siegel, Cooper & Co.* 191 id. 226; *Railway Co.* v. *Wallace,* 110 id. 114.

A person who finds a street crossing blocked by a railroad train becomes a trespasser in entering upon the railroad property for the purpose of getting around the train,

and the company cannot be held liable for his death unless it is guilty of wantonness or willfulness. *Hastings* v. *Railway Co.* 143 Fed. Rep. 260; *Stillson* v. *Railroad Co.* 67 Mo. 671; *Martin* v. *Railroad Co.* 62 Ark. 156.

The court should not have permitted the introduction by the plaintiff of evidence attacking the integrity of the appointment of Joseph T. Wachowski as administrator of deceased's estate. That appointment by the probate court of Cook county is presumed to be legal, and when appointed he became, at least, administrator *de facto,* and his acts were binding, and the regularity of his appointment cannot be questioned in this or in any other collateral proceeding. *Snell* v. *Chicago,* 38 Ill. 383; *Wight* v. *Wallbaum,* 39 id. 554.

It was error for the trial judge to so question witnesses, in the presence of the jury, as to exclude certain admitted evidence from consideration by the jury. *Kennedy* v. *People,* 44 Ill. 283.

The action of the probate court granting administration, however erroneous it may be, must be regarded as binding in every collateral proceeding. The appointment is voidable only in a direct proceeding, and not void. *Hobson* v. *Ewan,* 62 Ill. 146; *Kling* v. *Connell,* 105 Ala. 590; *Irwin* v. *Scriber,* 18 Cal. 499; *Allen* v. *Richardson,* 89 Tenn. 525; *Railroad Co.* v. *Mahoney,* 89 id. 311; *Bolton* v. *Schriever,* 136 N. Y. 65.

The question whether a particular county court has jurisdiction of a particular estate is a question of fact to be determined by that court, and when once determined the judgment is conclusive and cannot be questioned in a collateral proceeding. *Bostwick* v. *Skinner,* 80 Ill. 147.

The release of an acting administrator, regularly appointed by a court of competent jurisdiction, is a sufficient acquittance and bars any action for a subsequent recovery, notwithstanding some irregularities may have intervened in

the appointment of the administrator which would be fatal on appeal or error. *People* v. *Cole,* 84 Ill. 329.

H. STERLING POMEROY, and JOHN L. MURPHY, for appellee:

A private individual is not, by law, compelled to stop and wait at a railroad crossing until the railroad company has removed cars partly blockading it. He has a right to pass around the end of the train, and in so doing he does not become a trespasser even if he steps over the line of the street onto the private right of way of the railroad company. *Smith* v. *Savannah Co.* 11 S. E. Rep. 455; *Railroad Co.* v. *Mayer,* 203 Ill. 511.

Persons in position of great peril are not required to exercise all the presence of mind and care of a prudent and careful man. The law makes allowances for them and leaves the circumstances of their conduct to the jury. *Railroad Co.* v. *Rice,* 152 Ill. 9; *Railroad Co.* v. *Yarwood,* 17 id. 509; *Wrecking Co.* v. *Dandelin,* 143 id. 409; *Railroad Co.* v. *O'Connor,* 77 id. 391; *Railroad Co.* v. *Corson,* 198 id. 98.

Running trains through the corporate limits of a city at a greater speed than is permitted by ordinance is negligence *per se.* *Railroad Co.* v. *Mochell,* 193 Ill. 208.

The running of a train at a greater rate of speed than allowed by ordinance of a city, especially through grounds thronged with people, is negligence so gross as to amount to a wanton and reckless disregard of the safety of the public. *Railroad Co.* v. *Bodemer,* 139 Ill. 596.

Defendant's pleading the general issue admits the valid appointment of plaintiff as administrator or administratrix, as the case may be, and the capacity of the plaintiff to sue. *Hughes* v. *Richter,* 161 Ill. 411.

The representative capacity of the party suing, if attacked, must be put in issue by a special plea for the purpose. *Railroad Co.* v. *Smith,* 180 Ill. 457.

Mr. JUSTICE DUNN delivered the opinion of the court:

From a judgment rendered by the circuit court of Bureau county for damages suffered on account of the death of the plaintiff's intestate the defendant appealed to the Appellate Court for the Second District, which affirmed the judgment, and the defendant has now appealed from the judgment of the Appellate Court.

The deceased was killed by appellant's train near the Main street crossing of appellant's railroad in the city of Kewanee. The street runs north and south, and is crossed by the railroad from east and west at an angle about thirty degrees south of west. At the intersection were two main tracks on the north, two passing tracks immediately south of them, and, still further south, a switch track entering the premises of the Western Tube Company, on the east side of Main street and adjacent to the railroad. There were gates south of these tracks across all of Main street except the east sidewalk, where there was no arm of the gate, because the switch entering the tube company's yard ran diagonally and the gate could not be closed across the sidewalk without interfering with the use of the switch. There were a large number of the employees of the tube company who left their work for the noon hour at twelve o'clock and at five and ten minutes before that hour, many going north on Main street across the railroad tracks to their dinner, so that the crossing was much used at that particular hour. At that precise time, viz., 12:01 o'clock, a fast train from the east on appellant's railroad was due at the station in Kewanee, two blocks west of the Main street crossing. It was this train which killed Dominick Balsewicz, the intestate. He was a Lithuanian boy, eighteen years old, who had come to this country from northern Russia less than a year before his death. He had come with his mother to Spring Valley to his father, who had preceded them fourteen years, and he worked in the coal mines there until three weeks before his death, when he got employment in the foundry

of the Western Tube Company. He could neither speak nor understand English. He boarded on Main street, north of the railroad. On April 29, 1905, the day he was killed, Dominick came out on Main street from the premises of the tube company at the usual time to go home to dinner. He found a switch engine, with several freight cars attached, standing on one of the tracks and obstructing the whole width of Main street, including the sidewalks. The engine was headed west and extended a few feet west of the west line of the street, while the cars attached extended east of the street. The gates were not down when he passed them but were lowered immediately afterward, though there is no evidence that he knew it. The way being obstructed he walked across the street and around the front of the engine. He then turned in a north-easterly direction toward the street and the railroad track. He was called to by the tower-man, and also by one of the switchmen, who tried to seize and stop him, but he ran in front of the passenger train which was approaching at the moment and was killed, being thrown by the force of the impact several feet into the air and forty to sixty feet from where he was struck.

The defendant asked an instruction for a verdict in its favor, and now insists that its refusal was erroneous because the evidence shows that the deceased was a trespasser on the right of way of the appellant when he was killed and not in the exercise of ordinary care for his own safety. The declaration contained counts for negligence in running the train at a high and dangerous rate of speed; in blocking the street crossing, in violation of the statute; in violating the ordinance of the city in regard to the speed of trains; in failing to warn persons using the crossing of the approach of trains, and in failing to maintain and operate gates, signals and warnings for that purpose. There was evidence tending to support these counts, and the verdict is not questioned on the ground that the negligence of the appellant was not proved.

In passing upon a motion for a directed verdict the court does not weigh evidence. It looks only to the evidence supporting the claim of the party against whom the motion is directed, and that in the light most favorable to him. Contradictory evidence, however strong, cannot be considered. If the condition of the evidence, at the close of the plaintiff's case, does not justify an instruction for a verdict in favor of the defendant, no evidence which the defendant may introduce will justify such instruction except uncontradicted evidence of an affirmative defense. Evidence contradictory of the plaintiff's will not do it.

There was evidence in support of the plaintiff's claim which tended to show that the deceased found the switch engine and cars standing across the street; that the gates were not down; that without knowledge of the approach of the passenger train he started to walk around the end of the engine, and in so doing passed from the west line of the street a few feet on appellant's right of way; that as he came around the engine he was running in a north-easterly direction toward the street and the railroad main track; that he was called to and the switchman with the switch engine tried to catch him; that the deceased jerked loose and ran upon the track in front of the train; that his body was thrown sixty feet from where it was struck and that the train was running forty miles an hour. There was also evidence that the switch engine started west just as the deceased was crossing in front of it, and its bell was ringing. The distance between the track on which the switch engine stood and the track on which the deceased was struck was eighteen feet. The engine starting just as he crossed in front of it; the noise of its bell; the shouting of the towerman, which he could not understand; the effort of the switchman to seize him, and his effort to jerk loose and escape what he might have regarded as an intended assault, would all tend to his confusion and might cause him momentarily to overlook his danger. Whether his actions, un-

der the circumstances, were such as were consistent with reasonable care was a question of fact which it was proper to submit to the jury.

The place where the deceased was struck was outside the limits of the street and on the right of way of the appellant. The evidence most favorable to appellee is that it was three feet west of the street. It is insisted that the deceased was therefore a trespasser and the appellant owed him no other duty except not to wantonly injure him. When the deceased found the street blocked by cars he was not bound to wait until appellant removed them. By passing around the end of the train he was not deprived of the right to have appellant use care not to injure him. He was not injured by the train he went around, and was returning toward the street when the switchman tried to catch him. The fact that in using the street crossing for the purpose of reaching the other side of the track he had stepped slightly to one side, so that he was actually struck a few feet outside of the line of the street, did not relieve the appellant of exercising toward him the same degree of care as if he had remained within the limits of the street.

From the time he came to America the deceased had always lived with his parents in Spring Valley until he came to Kewanee, three weeks before his death, and he had no other home, except, temporarily, his boarding house in Kewanee. On July 27, 1905, letters of administration on his estate were issued by the county court of Bureau county, in which Spring Valley is situated, to his father, who then began this suit. On the trial the defendant offered in evidence a certified copy of letters of administration issued on the deceased's estate by the probate court of Cook county to one Wachowski on June 5, 1905, and a release dated June 6, 1905, executed by the said Wachowski, as administrator, to the appellant, of all claims on account of the death of the decedent. The evidence does not show on whose petition these letters issued, who Wachowski was or anything

about him, except that he was seen once or twice around the offices of appellant in Chicago at the time the letters were issued and the release signed. He was a stranger to the Balsewicz family and was not entitled to administer on the estate. By what sort of means the probate court of Cook county was induced to issue letters of administration does not appear. It is to be presumed, however, that a petition was filed and sworn to by some one, and that the court found, from the evidence before it, that the facts necessary to give it jurisdiction existed. The court permitted the appellee to prove the facts showing that the probate court of Cook county had no jurisdiction to grant administration of the estate of Dominick Balsewicz, and refused to instruct the jury that the release of the Cook county administrator was a defense to the suit. It is contended that the court erred in admitting this evidence and refusing the instruction.

The probate court of Cook county has general jurisdiction of the settlement of the estates of deceased persons, and, when adjudicating upon questions arising in such matters, as liberal intendments are to be made in favor of its findings as of those of courts of general jurisdiction. (*Bostwick* v. *Skinner,* 80 Ill. 147; *Blair* v. *Sennott,* 134 id. 78.) Residence of the deceased, at the time of his death, within the territorial jurisdiction of the court is essential to give the probate court jurisdiction to grant administration of his estate. But the probate court having general jurisdiction of the subject matter of the settlement of estates, if such court has assumed jurisdiction of a particular estate and granted administration thereof, then, in accordance with the rule in regard to the acts of courts of general jurisdiction that all intendments of law are in favor of such acts and that they are presumed to have jurisdiction to give the judgments they render until the contrary appears, such grant of administration is conclusive and not subject to attack in a collateral proceeding. (*Wight* v. *Wallbaum,* 39 Ill. 554; *Schnell* v. *City of Chicago,* 38 id. 382; *Hobson* v.

*Ewan,* 62 id. 146; *Bostwick* v. *Skinner, supra.*)  In these
cases the question did not arise precisely as it does here.
The case of *Bolton* v. *Schriever,* 135 N. Y. 65, however,
presents the question as it arises here, and it was there held
that the fact that the decedent was not at the time of his
death a resident of the county in which administration of
his estate was had does not authorize a collateral attack upon
the acts of the administrator.  While there are decisions to
the contrary, the decided weight of authority is in favor of
the proposition that the appointment of an administrator by
a court of general probate jurisdiction is valid against col-
lateral attack on the ground that the decedent was not a
resident of the county. *Kling* v. *Connell,* 105 Ala. 590; *Ir-
win* v. *Scriber,* 18 Cal. 499; *Eller* v. *Richardson,* 89 Tenn.
575; *Railway Co.* v. *Mahoney,* id. 311; *Jordan* v. *Chicago
and Northwestern Railway Co.* 125 Wis. 581; *Comstock*
v. *Crawford,* 3 Wall. 396; *Grignon's Lessee* v. *Astor,* 2
How. 319.

It is insisted by the appellee that the general issue (ap-
pellant's only plea) admitted his right to maintain the suit
and the regularity of his appointment, and that admitting
evidence of the Cook county administration was permitting
a collateral attack on his appointment.  The appellee's right
to sue or to administer the estate was not questioned.  It
was only sought by the appellant to show that it had made
a settlement with an administrator whose act bound the es-
tate and had obtained a release from him.  This it might do
under the general issue.  It was error to admit evidence to
impeach the Cook county administration and to refuse to
instruct the jury that the release was a bar to the action.

It is claimed that evidence of the fact that the deceased
had never lived in Cook county tended to show that the
Dominick Balsewicz of Cook county, on whose estate ad-
ministration was granted by the probate court of that
county, was not the Dominick Balsewicz, Jr., of Bureau
county, on whose estate administration was granted by the

county court of the latter county. In view of the letters of administration and release already in evidence the evidence had no such tendency, and unless accompanied by further proof was inadmissible.

Error is assigned, also, on the action of the trial judge in questioning the witness who testified in regard to the execution of the release by the Cook county administrator, Wachowski. The witness was a stenographer in the offices of the appellant in Chicago, and the questions addressed to her by the court were in the nature of cross-examination directed to the object of ascertaining who and what Wachowski was and his relation to the appellant. This trial occurred seventeen months after the suit was begun. The settlement had been made over two months before the suit was begun. During all this time apparently nothing was said to the appellee or his attorneys about the settlement until the production of the release upon the trial. Apparently the probate court of Cook county had been imposed upon to grant administration of the estate, not for the purpose of collecting and preserving the assets, but that the only asset might be extinguished. There were indications that perhaps the courts were being imposed upon with the object of enabling a fraudulent defense to be made to the appellee's suit. Under the circumstances it seems not unnatural that a judge having some sense of justice should be inclined to ascertain the facts, so far as possible, to the end that the court should not be used as an instrument of injustice. We see no impropriety in the action of the judge in questioning the witness or in the questions asked.

Complaint is made of the refusal to give instructions 2, 4, 5, 6, 7 and 8. Each is based upon the hypothesis that the deceased was a trespasser and the appellant would be liable only for a wanton or willful injury, and is therefore inconsistent with the views heretofore expressed in this opinion. The third instruction given for the plaintiff is the converse of those refused and it was therefore not error to

give it.   The eleventh refused instruction informed the jury that willfulness or wantonness in the infliction of an injury could not be charged to a railroad company merely because of its failure to comply with the speed ordinance.   It was properly refused.   Failure to comply with a speed ordinance may, or may not, establish willfulness or wantonness, according to the rate of speed and the circumstances.

The judgments of the Appellate Court and circuit court are reversed and the cause remanded to the circuit court.

*Reversed and remanded.*

HAND and SCOTT, JJ., specially concurring:

We concur in the judgment entered herein but not in what is said in the opinion written by Mr. Justice DUNN relative to the alleged purpose for which a grant of administration was obtained from the probate court of Cook county.   There is no evidence showing for what purpose letters were obtained from that court.

FARMER and VICKERS, JJ., dissenting:

We cannot assent to the reversal of the judgment in this case on the grounds stated in the opinion.   There are, as we understand the law, exceptions to the general rule against collateral attack on judgments.   Where a court, not having jurisdiction to appoint an administrator of the deceased, is induced by fraud to make the appointment, we think it is subject to attack collaterally in the interests of justice, and this view finds support in *Sidensparker* v. *Sidensparker,* 52 Me. 481, *Pisano* v. *Shanley Co.* (N. J.) 48 Atl. Rep. 681, *Broughton* v. *Bradley,* 34 Ala. 694, and *Harwood* v. *Wylie,* 70 Tex. 538.

In our opinion the judgment in this case should have been affirmed.