2025 IL App (2d) 240536
No. 2-24-0536
Opinion filed September 3, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| GREGORY J. SMITH, as Beneficiary of the Estate of John E. Smith, Deceased, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-MR-50 |
| MARGARET CONNOR, as Executor of the Estate of John E. Smith, Deceased, | ) ) ) ) | Honorable Kevin T. Busch, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1    Gregory J. Smith (Smith) appeals from the trial court's dismissal of his first amended complaint as time-barred under section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2024)). Smith contends that his claim against Margaret Connor (Connor) for breach of fiduciary duty was a claim against her in her personal capacity and not a claim against the estate; as such, he argues, the claim is not subject to the provisions of section 18-12(b) of the Probate Act of 1975 (Act) (755 ILCS 5/18-12(b) (West 2024)). For the reasons that follow, we affirm.

¶ 2                                I. BACKGROUND

¶ 3     On October 20, 2009, John E. Smith (decedent) executed a last will and testament (Will) that appointed his daughter, Connor, as executor. The Will provided that if Connor was unable or unwilling to act as executor, his son Smith would be appointed as successor executor. Relevant here, the Will provided that decedent's property be devised as follows: "One-eighth (1/8) of my estate to my granddaughter, MARGARET MARY BLACK"; "One-eighth (1/8) of my estate to my grandson, JACOB ANTHONY BLACK"; "One-fourth (1/4) of my estate to my daughter, MARGARET ROSE CONNOR"; "One-fourth (1/4) of my estate to my son, GREGORY JOHN SMITH"; and "One-fourth (1/4) of my estate to my son, JOSEPH EDWARD SMITH."

¶ 4     Also on October 20, 2009, decedent granted Connor power-of-attorney, which included the power "[t]o modify or change beneficiaries or joint tenancies."

¶ 5     On September 18, 2002, decedent executed a beneficiary change to his Country life insurance policy. Connor was made the primary beneficiary under the policy; Smith and Joseph Smith were named as secondary beneficiaries if Connor predeceased them.

¶ 6     On January 27, 2021, decedent modified an account agreement for a Busey Bank interest checking account to change the ownership to a joint tenancy with survivorship to Connor.

¶ 7     On March 30, 2021, decedent and Connor executed a certificate of deposit (CD) in the amount of $15,003.78 with Busey Bank. The account's ownership was held in joint tenancy with survivorship to Connor.

¶ 8     On May 10, 2021, decedent, via Connor's power-of-attorney, modified an account agreement for a Busey Bank money market account to change the ownership to a joint tenancy with survivorship to Connor.

¶ 9        In addition to the foregoing accounts and policies, decedent had a Met Life total control life insurance policy and Knights of Columbus life insurance policy. Both policies named Connor as the beneficiary.

¶ 10      In May 2021, decedent suffered a stroke and was hospitalized in Urbana, Illinois. He was subsequently placed in hospice care in Arlington Heights, Illinois, until he ultimately passed away on July 25, 2021. As decedent was a resident of Tolono, Illinois, Connor directed the Steve Beckett Law Office, LLC, to file the Will with the clerk of the circuit court of Champaign County on July 30, 2021.

¶ 11      On September 12, 2021, Connor e-mailed to the heirs the following:

> "Here is the state of the estate:
>
> $80,000 in a savings account
>
> $15,000 in a CD that comes due Oct 2022
>
> $10,000 in checking account
>
> $7000 from life insurance policy through Knights of Columbus[.] Trying to get the $11,000 from another life insurance policy through Country Companies.
>
> ***
>
> I am working on closing out these accounts and getting funds disbursed, however I still do not have the death certificate yet.
>
> Working our way through it!"

¶ 12      On December 7, 2021, Connor e-mailed Smith that she would "keep [him] posted on how we are moving forward with getting an executor hired for the Will." The e-mail contained a forwarded correspondence between Connor's husband, Jim Connor, and their attorney with Robinson Payne, LLC, which read as follows:

"You had helped us set up our estate plan, and wanted to reach out to get some advice.

Marge's father passed away this summer, and Marge was set up as the executor of the will.

Her father was remarried after his first wife died.

There is no trust tied to his general assets, just the will.

There is a real estate trust that is tied to the house that he and his new wife owned together.

That (hopefully) is working its way through the process. But as part of the trust resolution, there was one family member who accused Marge of taking money that was not hers.

Not a good situation, but not uncommon.

So, for the remainder of the estate, she was looking for someone to step in and be an executor or provide a service around the execution of the will.

What is the right way to do this, and do you have any recommendations?"

¶ 13 On April 17, 2023, attorney J. Steven Beckett sent the following e-mail to the heirs: "Dear Smith Heirs:

Marge Connor has contacted me asking for assistance regarding the distribution of funds that she received as a result of the death of your father and grandfather, John E. Smith.

I must disclose at the outset that I was a friend of John's and a brother Knight of the Knights of Columbus at St. Patrick's Church in Urbana. I am sure that John would be disappointed that there were any disagreements among you that would rise to the level of

needing my assistance; but I do want to assist in hopefully having the Smith Heirs arrive at an agreement.

Marge has dutifully collected the funds from the Busey Bank checking account and certificate of deposit that she held with John. She has filed and received the proceeds of the life insurance claims with Knights of Columbus, Total Control Life Insurance Company and Country Companies. She acknowledges she processed the claims, received the funds and paid last expenses related to John's death as an informal trustee or executor, because no formal probate proceeding would be necessary.

My understanding is that Smith Heirs do want the distribution to occur, but have not been able to achieve an agreement on the structure and documentation of the distribution. I have drafted a proposed Smith Heirs Distribution Agreement and Mutual Release for your consideration. Once the funds have been distributed there should be no claims or disagreements amongst the heirs and that should be documented. I have attached the proposed agreement to this electronically sent letter."

The attached proposed agreement read as follows:

"Smith Heirs Distribution Agreement and Mutual Release

The parties hereto, the Heirs of John E. Smith, covenant and agree as follows:

Whereas John E. Smith died on July 25, 2021, leaving as his heirs (1) Margaret Connor, daughter, (2) Gregory J. Smith, son (3) Joseph Smith, son and (4) Jacob Black and Margaret Czernia, grandchildren—the children of Donna Black, deceased;

Whereas John E. Smith left a Last Will and Testament and there have been no probate proceedings regarding said will, but which provisions distribute the probate estate of John E. Smith in four shares for his four children;

Whereas John E. Smith had payable on death a bank account and certificate of deposit at Busey Bank, a life insurance policy with Knights of Columbus payable on death, and a life insurance policy with Total Control Life Insurance payable on death—all payable to Margaret Connor and which have all been processed into one fund;

Whereas the payable on death provisions of the bank holdings and life insurance policies were intended by John E. Smith to be an informal trust held by his daughter, Margaret Connor, as Trustee, from which the proceeds should be divided among his heirs as provided in his Last Will and Testament;

Whereas the parties wish to abide by the wishes of their father and grandfather, and distribute the fund that has been created by the processing of the bank accounts and life insurance claims;

Now Therefore It is Agreed Between the Parties:

1. Description of Assets in John E. Smith Fund: Margaret Connor has collected the proceeds from Busey Bank account 0505 and Certificate of Deposit, and the proceeds of the two life insurance policies. The Knights of Columbus Life Insurance proceeds were $7,413.11. The Total Control Life Insurance proceeds were $11,687.55. All funds to be distributed to the John Smith heirs are currently in accounts at Busey Bank. The accounts at Busey Bank are to be distributed in accordance with the provisions of the John E. Smith Last Will and Testament, and the heirs recognize that such a distribution will not require probate proceedings in the Circuit Court of Champaign County.

The funds available for distribution at the time of this agreement are:

Busey Bank Pillar Checking $ 48,625.27

Busey Bank Pillar Money Market $ 110,019.63

Busey Bank Certificate of Deposit $ 14,874.18

Total Smith Fund for Distribution $ 173,519.08

2. Expenses and Net Funds for Distribution. The parties have incurred legal fees to Robin Payne LLC in the amount of $ 4,479.50, and $580.00 to Steve Beckett Law Office LLC which have been paid from the Smith Fund, with the current balance of funds at Busey Bank, set forth in Paragraph 1 above, having already reflected said expenses. The additional legal fees for Steve Beckett Law Office LLC, assuming execution of this agreement shall be $1,000.00. The net funds for distributions are $172,519.08.

3. Distribution to Smith Heirs. Each of the Smith Heirs shall receive a distribution consistent with the terms of the Last Will and Testament of John E. Smith as follows:

Margaret Connor (25%) $ 43,129.77

Gregory J. Smith (25%) $ 43,129.77

Joseph Smith (25%) $ 43,129.77

Jacob Black (12.5%) $ 21,564.89

Margaret Czernia (12.5%) $ 21,564.88

Total Distributed $172,519.08

The funds are held in interest bearing accounts and any earnings shall be allocated in accordance with the appropriate beneficiary shares at the time of distribution.

4. Acceptance of Disclosure. Margaret Connor covenants that she has made full disclosure of the assets that were payable on death to her following the death of John E. Smith, and any and all proceeds that she has received or controlled as a result of his death. The parties have received and accepted the disclosure of these assets. Margaret Connor has paid from the Smith Fund, or from separate funds all claims or indebtedness of John E.

Smith and no claim has been presented to her for the Smith Funds, except for the distribution claims of the parties and the legal expense incurred in connection with the distribution of funds to the parties hereto.

5. Smith Residential Trust Agreement Claims and Litigation. The parties acknowledge the existence of the Smith Residential Trust Agreement, dated March 29, 2013, and pending litigation in Champaign County Circuit Court as case number 2022 CH 028 Catherine Brown, Trustee v. Margaret Connor et al, This Distribution Agreement is separate and apart from any issue related to the pending litigation and claims thereunder; No provision of this agreement shall have any effect upon the claims of the parties thereunder.

6. Merger and Mutual Release. This agreement is the entire agreement of the parties. No other agreements exist, and no provision of this agreement may be modified unless done so in writing signed by all the parties. The parties hereto release and discharge each other from any liability associated with the death and potential probate of the affairs of John E. Smith to the fullest extent possible.

7. Separate Signatures. Each of the parties shall execute this agreement on a separate signature page. Upon completion of the document by return of all signature pages, a complete document with all signatures will be transmitted to all parties."

¶ 14 On February 2, 2024, Smith initiated the underlying proceedings by filing a three-count complaint for declaratory judgment, breach of fiduciary duty, and an accounting of the estate. Connor filed a motion to dismiss pursuant to section 2-619(a)(5) and (a)(9) of the Code (735 ILCS 5/619(a)(5), (9) (West 2024)). Connor asserted that Smith's claims were time-barred by the provisions of section 18-12(b) of the Act (755 ILCS 5/18-12(b) (West 2024)). Further, Connor

averred that the estate had no assets and, therefore, was not required to be admitted to probate. Finally, Connor stated that she tried to distribute her father's proceeds to the heirs in harmony with his wishes in the Will. She supported the motion to dismiss with an affidavit pursuant to Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). Therein, she attested that she received funds from decedent's life insurance policies and deposited them into the Busey Bank accounts that she held in joint tenancy with right of survivorship. She further attested that the funds in the Busey Bank accounts were not estate assets as they passed directly to her following her father's death.

¶ 15 Smith filed an affidavit pursuant to Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013), asserting that Connor had to be deposed to determine (1) when and how she provided notice to Smith that the Will was filed in Champaign County; (2) whether the Busey bank accounts were opened by decedent and Connor jointly and whether decedent intended those funds to be estate assets; and (3) why Connor mailed Smith a check for $42,727.56 on two separate occasions if she believed the funds belonged to her through survivorship.

¶ 16 On April 11, 2024, Connor gave deposition testimony pursuant to Rule 191(b). Connor's testimony did not contradict any of the pleadings discussed in the foregoing regarding decedent's accounts and insurance policies. She testified that the funds from those accounts and insurance policies passed to her through survivorship and she attempted to distribute those funds in a manner consistent with decedent's wishes as expressed in the Will. Connor did admit that she never had any intent to hire an executor as expressed in her December 7, 2021, e-mail to Smith.

¶ 17 On April 23, 2024, Smith filed a three-count first amended complaint (amended complaint). Relevant here, count II alleged breach of fiduciary duty against Connor.[1] Smith alleged

---

[1] In in his brief presented to this court, Smith does not challenge the dismissal of count I for

that Connor and attorney Beckett refused to answer his questions as to why the legal fees incurred by Connor were necessary to fulfill her duties as executor, as Smith believed the fees to be unrelated to such duties. He alleged that Connor breached her fiduciary duties by:

"a. Failing to notify Plaintiff or any of the heirs that John Smith's Will was filed with the Clerk of the Circuit Court of Champaign County;

b. Attempting to administer the distribution of the Estate Assets to the Heirs without first opening a probate estate;

c. Incurring unnecessary costs and legal fees from Robinson Payne LLC and Steven Beckett Law LLC, which were unreasonably related to Defendant's fulfillment of her duties as executor;

d. Engaging in self-dealing by placing her own interest above Plaintiff's and the heirs;

e. Failing to provide an accounting of costs and legal fees, although repeatedly demanded;

f. Failing to keep Plaintiff and the heirs reasonably informed; and

g. Misrepresenting and concealing facts regarding John Smith's Estate and the Estate Assets in her capacity as Executor, to Plaintiff's detriment."

Smith sought to be named as successor executor as per the terms of the Will due to Connor's alleged unwillingness to perform her duties.

---

declaratory judgment or count III seeking an accounting of the estate. As such, any contentions related to the dismissal of those counts are deemed forfeited for the purposes of the present appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 18    On August 14, 2024, the trial court held a hearing on Connor's motion to dismiss. The trial court granted the motion and dismissed Smith's amended complaint, with prejudice. Relevant here, it found that the claim for breach of fiduciary duty was "really relate[d] to the administration of the estate and claims against the estate" and was time-barred as filed outside the two-year statute of limitations, pursuant to section 18-12 of the Act (755 ILCS 5/18-12 (West 2024)).

¶ 19    This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21    Smith contends that the trial court erred in dismissing his amended complaint because the claim for breach of fiduciary duty was not a claim against decedent's estate under section 18-10 of the Act but, rather, a claim against Connor. As such, his claim for breach of fiduciary duty is not subject to the limitations period prescribed by the Act.

¶ 22    Section 2-619(a)(5) allows for the dismissal of a cause of action if "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2024). "When deciding a motion based on section 2-619 of the Code, a court accepts all well-pleaded facts in the complaint as true and will grant the motion when it appears that no set of facts can be proved that would allow the plaintiff to recover." *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 11. Pleadings and supporting documents should be construed "in the light most favorable to the nonmoving party." *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 24. An order granting a section 2-619 motion to dismiss is subject to *de novo* review. *Lawler*, 2017 IL 120745, ¶ 11.

¶ 23    Section 18-10 of the Act classifies claims against the estate as, *inter alia*, claims related to "[t]he surviving spouse's or child's award." 755 ILCS 5/18-10 (West 2024). Smith's amended complaint identifies himself as decedent's son with "an apparent legal, tangible interest in the

proper administration and distribution of [decedent's] Will and Estate Assets." His amended complaint further alleges that Connor "misappropriated Estate Assets" and refused to act as executor of decedent's estate. In his amended complaint, Smith sought to replace Connor as executor, an accounting of estate assets, and distribution of estate assets to himself and the other heirs due to Connor's alleged misappropriation. Thus, the allegations in Smith's amended complaint identify him as a surviving child seeking an award through his claims against Connor in her capacity as the executor of the estate pursuant to section 18-10 of the Act.

¶ 24    Section 18-12(b) of the Act provides as follows:

> "(b) Unless sooner barred under subsection (a) of this Section, all claims which could have been barred under this Section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent." *Id.* § 18-12(b).

Consequently, a claim that is not filed against the estate within the limitations period is barred. *In re Estate of Bohn*, 2019 IL App (1st) 173083, ¶ 14. Compliance with section 18-12(b) is mandatory, and no exception to the filing period may be engrafted by judicial decision. *In re Estate of Topal*, 2022 IL App (4th) 210613, ¶ 18. The time for filing a claim begins to run at the date of death, and it continues to run even if, as here, no formal probate estate is opened within the two-year period. *Id.* ¶ 19.

¶ 25    In *Polly v. Estate of Polly*, 385 Ill. App. 3d 300 (2008), a widow sued her husband's estate for breach of contract of a prenuptial agreement and for an accounting. Her husband had died on June 4, 2003, and the relevant complaint was filed against the defendant estate on November 2, 2005. The trial court and the appellate court held that the two-year limitations period for filing a claim against the estate barred the widow's claims. *Id.* at 305. The widow's counts were contractual

"claims" against the estate rather than assertion of rights as an heir under the will; therefore, in accordance with section 18-12 of the Act, the widow had two years from the date of her husband's death to inform the estate of her claims. *Id.* at 304-05. The widow, however, failed to do so and thus her claims were barred by section 18-12 of the Act. *Id.* at 305.

¶ 26    In *In re Estate of McDonald*, 2024 IL App (2d) 230195, the petitioner sought to assert her rights as the decedent's putative spouse more than two years after his death. The petitioner objected to the estate administrator's amended distribution plan and filed a motion for leave to file amended objections to the amended proposed distribution plant. *Id.* ¶ 20. She also filed a motion to amend the trial court's heirship order. *Id.* ¶ 22. The administrator argued, and the trial court agreed, that the petitioner was making a claim against the estate that was barred by section 18-12 of the Act. *Id.* ¶ 23. On appeal, this court affirmed the trial court's decision by holding that petitioner was pursuing a cause of action under the Act as her motions constituted a claim against the estate. *Id.* ¶ 36. Petitioner's motions sought distribution of the entirety of the estate to her as the sole heir, thus reducing the value of the estate's assets. *Id.* ¶ 38. As the motions were filed more than two years after the death of decedent, this court held them to be untimely pursuant to section 18-12(b) of the Act. *Id.* ¶ 40.

¶ 27    Smith attempts to distinguish the two foregoing cases here. He argues that his claims are distinguishable because he does not seek to distribute the entirety of the estate to himself as sole heir. He argues that his claims, if successful, would not reduce the value of the estate, nor do they attempt to invalidate the Will. Smith asserts that his amended complaint's claim for breach of fiduciary duty seeks relief against Connor for duties owed to him. We disagree. As this court held in both *Polly* and *McDonald*, a cause of action filed by an heir seeking distribution of estate assets,

or for an accounting of estate assets, is a claim against the estate under the Act. See *id.* ¶ 38; see also *Polly*, 385 Ill. App. 3d at 302.

¶ 28    The Act requires that any claim that might be filed within the contemplation of the Act, whether based on contract, tort, or otherwise, must be filed within the limitations period that the Act provides. *Rozycki v. Gitchoff*, 180 Ill. App. 3d 523, 525 (1989). If such a claim is not filed, it will be barred and cannot be pursued in a separate proceeding. *Id.* Here, Smith filed an amended complaint against Connor in her capacity as the executor of decedent's estate more than two years after his father's death. All the operative facts of the amended complaint and the causes of action alleged clearly constitute claims against the estate under the Act and were properly dismissed as time-barred by the trial court.

¶ 29    We must briefly address the breaches of fiduciary duty alleged in Smith's complaint. First, Smith cites no statutory authority or case law that stands for his assertion that Connor was required to notify him of the filing of the Will in Champaign County. This court is unaware of any such requirement. Second, Smith fails to develop the argument that Connor was required to submit the Will to probate when all funds from decedent's accounts and insurance policies passed directly to her through survivorship.

¶ 30    It is unclear what Smith would gain even if this court were to agree with his positions. The Will and the record on appeal clearly illustrate that Connor has attempted to honor her father's express wishes. It is true that decedent's accounts and insurance policies passed directly to her through survivorship, but she attempted to liquidate those funds and distribute them to the heirs as prescribed by the Will. There were no assets of the estate, and Connor could have easily taken the funds through survivorship and done nothing else. With no assets to distribute, she arguably had no fiduciary duty to Smith in the first place, but that is a point we need not reach. Smith's main

point of contention seems to revolve around Connor's incurrence of just over $5,000 in legal fees related to advice and assistance she received to honor the wishes in the Will and distribute the proceeds of the accounts to the heirs. Such contention is meritless. In any event, as Smith's claims were filed more than two years following his father's death, they are untimely under the Act. See 755 ILCS 5/18-12(b) (West 2024).

¶ 31                                    III. CONCLUSION

¶ 32    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 33    Affirmed.

***Smith v. Connor*, 2025 IL App (2d) 240536**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 24-MR-50; the Hon. Kevin T. Busch, Judge, presiding. |
| **Attorneys for Appellant:** | Myles R. Carroll, of KMA Zuckert LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Samuel G. Harrod IV, of Meltzer, Purtill & Stelle LLC, of Schaumburg, for appellee. |